TEXAS POWER & LIGHT COMPANY, Appellant,

v.

TRINITY VALLEY RANCH COMPANY, a Corporation, et al., Appellees.

No. 16598.

Court of Civil Appeals of Texas.

Dallas.

Oct. 15, 1965.

Burford, Ryburn & Ford, Wayne Pearson and Spencer C. Relyea III, Dallas, for appellant.

Thompson, Coe, Cousins & Irons, R. B. Cousins and Franklin H. Perry, Dallas, and Ralph M. Hall, Rockwall, for appellees.

DIXON, Chief Justice.

Texas Power & Light Company, condemnor, has appealed from a judgment of $87,023.60 awarded to appellees Trinity Valley Ranch Company, a corporation, the landowner, hereinafter called the Ranch, and Lincoln Liberty Life Insurance Company, mortgagee, in a condemnation proceeding whereby appellant acquired an easement across land owned by the Ranch. The insurance company is the holder of a mortgage in the amount of $686,050 against the Ranch property.

The easement is 250 feet wide and 17,000 feet long. It includes 101.841 acres.

At the time of the trial appellant had completed on the easement a 345,000 volt transmission line supported by sixteen steel towers varying in height from 103 to 109 feet and located approximately 1100 feet apart. The tallest tower measures 17 feet by 32 feet at the ground level. There are eight separate wires running from tower to tower. At the lowest sag point between towers there is a clearance of approximately 32 feet. Appellant intends at some undetermined time in the future to construct on the easement another transmission line somewhat smaller than the line now in existence. It has the right to construct still other lines.

Under the terms of the taking appellant has no right to occupy any of the land permanently except that covered by the easement; may not fence or enclose the easement, or use it for any purpose except for the construction, maintenance and use of the transmission lines; and the Ranch has the right to pass back and forth over the easement, to raise crops on it and to use it for any purpose not inconsistent with appellant's use of the transmission line facilities. At the time of the trial crops were growing on the easement.

The land owned by the Ranch consists of 4939.84 acres in three separate tracts. One tract of 3439.57 acres is separated a distance of 297 feet from a tract of approximately 1250 acres. The third tract, some distance away, consists of 250 acres. The Ranch contends that the three properties are operated as a unit in a business of cattle raising and agriculture.

The manager of the Ranch testified that 3,000 acres of the largest tract are fertile bottom land and the remaining 439 acres are hill land. A levee protects the land from flooding when the Trinity River rises. The 1250-acre tract includes 1000 acres outside the levee. The 250-acre tract includes 100 acres of flood land inside the levee.

At the time of the trial there were many cattle on the ranch. Also there were 850 acres of oats, 1300 acres of maize, 600 acres of coastal Bermuda grass, 2000 acres of Johnson grass and a number of acres in alfalfa.

In answer to four special issues a jury answered that (1) the reasonable market value of the land covered by the easement immediately before the acquisition of the easement was $25,322.50; (2) immediately after, $5,065.50; (3) the value of the remainder immediately before was $834,570; (4) immediately after, $767,804. The judgment of $87,023.60 was based on these findings.

In six points on appeal it is the position of appellant that (1 & 2) there is no evidence, or there is insufficient evidence, to support the jury's answer to Special Issue No. 4; (3 & 4) there is no evidence, or there is insufficient evidence, to support the jury's finding of damages as reflected by its answers to Special Issues Nos. 3 and 4; and (5 & 6) there is insufficient evidence to support the jury's answers to Special Issues Nos. 1 and 3.

Four experts on real estate values testified in behalf of the Ranch. Three testified in behalf of the appellant. An analysis of their testimony and of the jury's findings follows:

LANDOWNER'S EX-
PERTS:

| WITNESS: | LAND COVERED BY EASEMENT (101 Acres) | | | REMAINDER (Land Outside Easement) | | | Total Damage |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Value Before | Value After | Damage | Value Before | Value After | Damage to Remainder | |
| Clements — Testified only in re 3439-acre tract | Land, $300 per acre; total value with improvements, $35,000 | None | $35,000 | $300 per acre | Loss of $50 per acre | $166,950 | $201,950 |
| Crenshaw — Testified in re entire 4939 acres | $325 per acre = $32,919.25 | $25 per acre = $2,532.25 | $30,387 | $325 per acre = $1,568,508 | 10% less | $156,850 | $187,237 |
| Ridell — Testified in re entire 4939 acres, $350 on average | $31,906 | $3,545 | $28,361 | $350 per acre = $1,692,193 | $1,575,353 | $116,840-Testified 1250-acre & 250-acre tracts not damaged | $148,746 |
| Ferguson — Testified only in re 3439-acre tract | $325 per acre | Nil | $325 per acre = $35,350 | $300 per acre | Loss of $35 per acre on 3300 acres | $115,500 | $150,850 |

| CONDEMNOR'S EXPERTS: | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Gardner<br>Testified only in re 3439-acre tract | $160 per acre = $16,206 | 25% to 50% of original value = $4,051.50 to $8,103 | $8,103 to $12,155 | $160 per acre = $534,124.80 | $534,124.80 | None | $8,103 to $12,155 |
| Love<br>Testified only in re 3439-acre tract | $162 per acre = $16,408 | $50 per acre = $5,064 | $11,344 | $162 per acre = $540,801 | $540,801 | None | $11,344 |
| Anderson | $15,969 | $8,684 | 7,285 | $544,051 | $544,051 | None | $7,285 |
| JURY'S FINDINGS | $25,322.50 | $5,064.50 | $20,258 | $834,570 | $767,804.40 | $66,765.60 | $87,023.60 |

As is not unusual in condemnation suits there is a great variance among the experts in their opinions as to land values and damages. The highest damage figure named by appellant's experts was $11,344. The highest named by appellees' experts was $201,950.

■ We cannot agree with appellant when it asserts in its first and third points that there is no evidence to support the jury's answer to Special Issue No. 4 (that the reasonable market value of the remainder after the acquisition of the easement was $767,804.40) and to the jury's finding of damages as reflected by its answers to Special Issues Nos. 3 and 4 (answer to No. 3: value of remainder before the acquisition, $834,570). By reference to the chart of the testimony above shown it will be seen that there is testimony to support the jury's answers.

The only other points presented by appellant allege that the evidence is insufficient to support the jury's answers to Special Issues Nos. 1, 3 and 4 and to the jury's finding of damages as reflected by its answers to Special Issues Nos. 3 and 4. These points in substance assert that the jury's answers to the named issues are so contrary to the weight of the evidence as to be manifestly wrong. The jury's answer to Special Issue No. 1 was that the 101 acres covered by the easement had a reasonable market value of $25,322.50 before acquisition of the easement.

Again referring to the above chart of the testimony we believe it is apparent that there is sufficient evidence to support the jury's answers. It was for the jury to pass on the credibility of the witnesses and the weight to be given to their testimony. In every instance their answers were less than the values as testified to by the Ranch's witnesses but more than the values testified to by appellant's witnesses.

Appellant cites the holding in Tennessee Gas & Transmission Co. v. Zirjacks, Tex. Civ.App., 244 S.W.2d 837. In that case the judgment was reversed because (1) there was no specific testimony detailing in what ways the activities of the condemnor on the easement would affect the value of land outside the easement; (2) there was no showing that the decline in value would be uniform throughout the remainder of land not covered by the easement; and (3) the jury based the damages on a per acre basis and must have determined that each acre was depreciated in value to the same extent. In our opinion the holding is not applicable to the testimony in the record now before us.

In this case the witness Ridell testified that the value of the land was "350 an acre average." This would indicate that he did not value each acre the same, but struck an average of their values for purposes of computing the value of the whole. Further, though he took into consideration all of the 4939 acres of the Ranch, he expressly stated that the 1250-acre tract had not been damaged at all by the taking and he did not include any damage to the 250-acre tract in his computations. In effect he testified that only the 3439-acre tract suffered any damage. It was the only one of the three tracts which was bisected by the easement.

In considering the sufficiency of the evidence we also bear in mind that no objection was made to the testimony because it was on a per acre basis, and no objections were made to the issues submitted by the court. In fact, appellant's witnesses themselves testified as to the values per acre, though they did testify that the remainder was not damaged at all.

■ There was a great deal of testimony by the landowner's witnesses in support of their opinion as to the damages suffered by the remainder because of the acquisition of the easement. The growing crops must be sprayed by airplane with an insecticide, and the towers and wires erected and to be

erected by appellant greatly impede the spraying on and near the easement with the result that insects tend to spread to other portions of the ranch. Seeds of weeds are spread by birds resting on the cables and are blown to other parts of the Ranch. Plowing and cultivation are rendered difficult and inconvenient. The crops on the easement may be torn and trampled by appellant's workmen and equipment in the construction and maintenance of appellant's facilities. Mutilation of the crops and ground took place when the present towers and cables were installed. Prospective purchasers consider the hugh towers and cables unsightly and devalue a piece of property when it is bisected by towers and power lines, thus causing a reduction in the market value of a tract. These and other matters were testified to by witnesses in support of their testimony that the taking of the easement would damage the remainder of the property, especially the 3439-acre tract. These elements are properly to be considered in assessing values and damages. Texas Power & Light Co. v. Jones, Tex.Civ.App., 293 S.W. 885; Texas Electric Service Co. v. Etheredge, Tex. Civ.App., 324 S.W.2d 322; Southwestern Public Service Co. v. Goodwine, Tex.Civ. App., 228 S.W.2d 925; South Texas Electric Cooperative, Inc. v. Beutnagel, Tex. Civ.App., 388 S.W.2d 447.

The witnesses for the Ranch did not testify as to any comparable sales. There was testimony that no comparable sales had been found. Appellant's witnesses did testify as to comparable sales. But the Ranch in rebuttal offered the testimony of the witness Ferguson, who testified in lengthy detail about all of the alleged comparable sales referred to by appellant's witnesses. He undertook to show that they were not comparable.

Appellant's points on appeal are overruled. The judgment of the trial court is affirmed.

Affirmed.