SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,

v.

J. Harlan WEST and wife, Doris West, Appellees.

No. 7993.

Court of Civil Appeals of Texas, Texarkana.

June 9, 1970.

Rehearing Denied June 30, 1970.

**144**

J. H. Hand and David L. Larson, Dallas, J. Kearney Brim, Sulphur Springs, Gerald R. Jenkins, Dallas, for appellant.

Howard S. Smith, Smith, Johnson & McDowell, Sulphur Springs, Woodrow H. Edwards, Mt. Vernon, for appellees.

CHADICK, Chief Justice.

The following statement from the appellant's brief gives the background and the general nature of this lawsuit; and for that purpose it is adopted: "This case is a proceeding in eminent domain to obtain a 20-foot wide limited easement across and under the land of Appellees in Hopkins County, Texas, for the installation of an underground communications cable necessary to provide long distance telephone service to the public in Sulphur Springs, Texas.

"The Commissioners in Condemnation awarded Appellees $300.00. Appellees appealed to the County Court of Hopkins County where a jury awarded $9,031.20. Appellant appealed to the Tyler Court of Civil Appeals which reversed the judgment and remanded the case for a new trial. In the interim, by Act of the 1967 Legislature, jurisdiction for eminent domain proceedings in Hopkins County, Texas, was placed in the District Court. In the second trial the District Court jury awarded Appellees $16,776. The trial court ordered a remittitur of $4,276."

The following is extracted from the judgment underlying this appeal, to-wit:

"* * * Southwestern Bell Telephone Company, a corporation, shall be invested with and shall have and recover of and from the defendants, J. Harlan West and wife, Doris West, a right-of-way easement to construct, operate, maintain, replace, and remove such telephone, telegraph and communications system as plaintiff, its successors and as-

signs, may from time to time require, consisting of underground cables, wires, conduits, splice boxes and other communications appurtenances under and across said twenty-foot right of way, together with the right of ingress and egress over and across the twenty-foot right of way across defendants' land, and right to clear and keep all trees, roots, brush and other obstructions from the surface and sub-surface of said right of way, with the right to install, maintain and use gates in fences which cross said right of way; provided, however, that cables shall be placed at such depth as not to interfere with the ordinary use of said land, and the Defendants and their heirs and assigns shall have the right to cultivate and otherwise use said right of way insofar as such does not interfere with or obstruct the use of said right of way by the Plaintiff, its successors and assigns, for the construction, operation, maintenance or removal of said telephone, telegraph and communications system; and provided further that the Defendants and their heirs and assigns shall be paid for any damages on said land that shall be caused by or result from the construction, maintenance, repairing or removing of said telephone, telegraph and communications system. IT IS FURTHER DECREED that the Defendants, their heirs and assigns, may place railroad spur tracks, roads, streets (private or public) or drainage structures over, across or through the twenty-foot wide right of way herein described and that the placing of such will not constitute interference with such easement and that Southwestern Bell Telephone Company does not have the right to prevent the placing by anyone with a legal right to do so, railroad spur tracks, roads, streets (private or public) or drainage structures, over, across or through the easement herein described. IT IS FURTHER DECREED that Southwestern Bell Telephone Company does not have any right by ingress or egress over and across any part of the 22.2 acre tract of land herein described, except the twenty-foot wide strip of right of way. The exact description of the right-of-way easement is as follows:

"A strip of land twenty (20) feet wide, the centerline of which begins on the West property line of said twenty-two and two-tenths (22.2) acre-tract at a point ten (10) feet North of the Southwest corner of said tract, thence Easterly 1,165 feet parallel with the South Boundary Line of said tract to a point on the East property line of the twenty-two and two-tenths (22.2) acre-tract, ten (10) feet North of the Southeast corner of said following described 22.2 acre tract."

(Note: The metes and bounds description of the 22.2 acres of land as it appears in the judgment at this point is omitted).

"All rights in, and to, said land, not inconsistent with the right-of-way easement granted to the plaintiff, are reserved by and to the defendants and such easement does not include title to the mineral estate under the defendants' land."

Appellant has briefed these points of error, to-wit:

"FIRST POINT. The Trial Court erred in submitting Special Issues No. 3 and No. 4 on damage to the remainder because as a matter of law, no damage to the remainder was shown by Appellees and thus, the jury was allowed to award erroneous damages.

"SECOND POINT. There being no evidence to support a finding that the value of the remainder of the tract was reduced from $1,150 to $400 per average acre, the Trial Court erred in overruling Appellant's Motion to Disregard Finding to Special Issue No. 4 and Appellant's Motion for Judgment Notwithstanding Jury's Finding to Special Issue No. 4.

"THIRD POINT. There being insufficient evidence to support a finding that the value of the remainder of the tract was reduced from $1,150 to $400 per average acre, the Trial Court erred in overruling Appellant's Motion to Disregard Finding to Special Issue No. 4 and Appellant's Motion for Judgment Notwithstanding Jury's Finding to Special Issue No. 4.

"FOURTH POINT. The Trial Court erred in entering judgment for Appellees for the sum of $12,500 because such sum was excessive."

The first and second points of error are conventional *no evidence* points. Evidence was adduced that industrial development was the highest and best use to which the original tract could be devoted. Appellant argues strenuously that access from the residue of the 22.2 acre tract to the railroad was not lost, under the terms of the judgment, as a result of the severance of the easement. From that base it is argued that the value opinions * in evidence of several expert appraisers are without probative effect because these opinions improperly consider loss of access from the residue tract to the railroad as an element of damage. It is patent that severing the easement from the 22.2 acre tract left the residue acreage 20 feet away from the railroad right of way, and access to the railroad therefrom limited by and subject to the easement and servitude associated with it. Clearly there is to some extent a loss or impairment of access and damage as a consequence.

In contemplating the use of the residue land for industrial purposes, the limitations on access to the railroad would influence in some degree the value to be placed upon it. But is the loss of access substantial and material? The record affirms that it is. Under the terms of the judgment, "railroad spur tracks, roads, streets", etc., might be laid out on the easement, but to mention a few structures that come readily to mind, such things as railside loading docks and permanent buildings of any nature are clearly prohibited. The cost of building spur tracks, etc., or the temporary nature and cost of facilities extending across the easement from the residue tract to the railroad would necessarily be reflected in the value placed on the residue land. The value witnesses viewed the impaired access as substantial and material, took into consideration the character of the limited acess imposed by severance of the easement and gave substantial weight to that factor.

■ Here damage to the residue arises out of the severance and because of it. The appropriation deprives the residue of a desirable pre-existing asset, complete, access to the railroad. Substantial and material impairment of access as shown, coupled with appropriation and severance of the easement from the original tract is actionable and the owner is entitled to damages for diminution in value of residue. The Constitution provides that no person's property may be taken, damaged or destroyed by the exercise of eminent domain power without adequate compensation being made. Tex.Const. art. I, § 17, Vernon's Ann.St. In recent years the Supreme Court of Texas has dealt with the loss of access problem in a different context, (access to a public street was impaired), and concluded that: "diminution in the value of property resulting from a loss of access constitutes damage". DuPuy v. City of Waco, 396 S.W.2d 103 (Tex.1965); City of Waco v. Texland Corporation, 446 S.W.2d 1 (Tex. 1969).

■ It is also argued that the appellees' value witnesses' opinion shows no relation between severance of the easement and diminution in value of the residue. All were familiar with the tract. One witness testified the limitations the easement placed on the use of the residue would eliminate purchasers for the residue, that

* Error, if any, in admission of such evidence was not preserved.

the restrictions on use of the easement space by the residue occupier made the residue less desirable for industrial purposes, that the easement would interfere with and disrupt use of the residue by industry. Another witness pointed to the industry using the residue's lack of control over improvements the telephone company might construct on the easement as detrimental to value. A third witness testified it nullified industrial use of the residue tracts. A fourth mentioned the easement's restriction on landscaping, the possible disruption of improvements placed on the easement by a user of the residue tract, unsatisfactory condition created by the telephone company right of ingress and egress, etc. Relation between severance and diminution in value is adequately shown. On the question of damages to residue lands resulting from a severance, the witnesses were required to show how the severance and consequent impairment of access related to or caused a loss in value to the residue. This may be done by specifying the facts and circumstances that tend to cause the residue land to be less useful than it was before severance. City of Houston v. McFadden, 420 S.W.2d 811 (Tex.Civ.App. Houston 1967, writ ref'd, n. r. e.); Southwestern Bell Telephone Co. v. Griffin, 429 S.W.2d 576 (Tex.Civ.App. Texarkana 1968, no writ); Texas Power & Light Co. v. Trinity Valley Ranch Co., 395 S.W.2d 866 (Tex.Civ. App. Dallas 1965, no writ); City of Waco v. Texland Corporation, supra.

Appellant's first and second points of error are overruled; as well as the third, it being an insufficient evidence point, and the discussion herein of other points demonstrates the evidence is sufficient to support the judgment of the trial court.

■ For the purpose of considering point of error No. 4, testimony of plaintiff's witnesses relevant to diminution in value of the residue tract will be summarized. Mr. Frank Wright, a building contractor and land developer, states the before severance value of the residue was $1500.00 per average acre and after severance $300.00 per average acre. Mr. Woodrow Walker, a land developer and trader in real estate, said before appropriation the value was $1500.00, and afterwards $300.-00. Mr. Rawlings Lemon, a real estate appraiser and in the insurance and loan business, placed before and after values at $1150.00 and $400.00. Mr. Buel Berry, a bank loan officer, found the before and after value to be $1400.00 and $350.00. Mr. M. Z. Bailey, a licensed real estate broker also engaged in the insurance and abstract business, found the value $1200.00 before, and $400.00 after. The trial court overruled the telephone company's motion for new trial, conditioned on remittitur of $4,276.00 by Mr. West and his wife. The Wests remitted.

The jury's conclusions on value fell well within the limits of the value testimony. Consideration of the record discloses nothing in the testimony of these and other witnesses or the circumstances of the case that tends to impugn credibility or compromise the witnesses' honest judgment and objectivity. There is nothing in the record or the nature of the evidence that would require or justify this court in discarding the evidence the jury accepted in part, or to give effect to evidence the jury rejected. The appellant's fourth point is overruled.

On considering the motion for rehearing a need to clarify and edit the original opinion appeared desirable. To do so the original opinion is withdrawn and this substituted for it. The motion for rehearing is overruled and the judgment of the trial court affirmed.